In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00070-CR

                                                ______________________________

 

 

                                     DANIEL REED YORK,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 336th
Judicial District Court

                                                             Fannin County, Texas

                                                      Trial Court No. CR-09-23270

 

                                                   
                                               

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                      MEMORANDUM OPINION

 

            Daniel
Reed York borrowed Debra Hutchings’ 2004 Chevrolet Trailblazer sport utility
vehicle (SUV), with the expressed intention to go out for a pack of cigarettes.  More than thirty hours later, York, still
driving the vehicle, was arrested and charged with unauthorized use of a
vehicle.[1]  In a jury trial in Fannin County, York was convicted
and sentenced to two years’ confinement. 
York now appeals, claiming the evidence is legally and factually insufficient.  We affirm the trial court’s judgment, because
the evidence was legally and factually sufficient.

            We
review the legal and factual sufficiency of the evidence supporting a
conviction under well established standards. 
In conducting a legal sufficiency review, we consider the evidence in
the light most favorable to the verdict to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Sanders v. State, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003).  We must give deference to “the responsibility
of the trier of fact to fairly resolve conflicts in testimony, to weigh the
evidence, and to draw reasonable inferences from basic facts to ultimate facts.”  Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson v. Virginia, 443 U.S. 307, 318–19
(1979)).  We are not required to
determine whether we believe that the evidence at trial established guilt
beyond a reasonable doubt; rather, when faced with conflicting evidence, we
must presume that the trier of fact resolved any such conflict in favor of the
prosecution, and we must defer to that resolution.  Turro
v. State, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

            In
conducting a factual sufficiency review, we consider the evidence in a neutral
light.  Watson v. State, 204 S.W.3d 404, 414–15 (Tex. Crim. App.
2006).  The verdict will be set aside
only if (1) it is so contrary to the overwhelming weight of the evidence as to
be clearly wrong and manifestly unjust, or (2) it is against the great weight
and preponderance of the evidence.  Id. at 415 (citing Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)).

            Both
legal and factual sufficiency are measured by the elements of the offense as
defined by a hypothetically correct jury charge.  Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); see also Grotti v. State,
273 S.W.3d 273, 280 (Tex. Crim. App. 2008). 
The State was required to prove that York:  (1) intentionally or knowingly operated a
motor-propelled vehicle (2) without the effective consent of Hutchings,
the vehicle’s owner.   Tex. Penal Code Ann. § 31.07.  An actor may have permission to operate
another’s motor-propelled vehicle, but then exceed the scope of the owner’s
permission or consent.  For example,
where the actor had permission to drive another’s vehicle and leave it in a
specific parking lot for the owner to retrieve the vehicle, “driv[ing] around
in the vehicle until [actor/appellant] was ready to return it” exceeds the
scope of the owner’s consent and constitutes unauthorized use of the vehicle.  Dodson
v. State, 800 S.W.2d 592, 593–94 (Tex. App.—Houston [14th Dist.] 1991, pet.
ref’d).

            Hutchings
testified that she had known York for about two years, that Hutchings’ and York’s
daughters were good friends, and that Hutchings was a friend of York’s ex-wife,
Trina Gee.  Hutchings denied any romantic
interest in York. 

            In
August 2009, Hutchings occasionally let York use Hutchings’ SUV.  On two occasions, August 11 and 12, York
drove Hutchings in her vehicle to her job in McKinney.   On one of those days, Hutchings found she
was not scheduled to work, and the two went to lunch; the next day, August 12,
York took Hutchings to work, then used her SUV during the day to bid for
construction jobs.  He arrived about two
hours late to pick her up.  

            That
night, York slept on the couch at Hutchings’ home in Bonham.  In the early morning of August 13, York asked
Hutchings to borrow her SUV to go buy cigarettes.  Hutchings said she told him to go to one
specific store, as it was the only one open at that time of night.  She did not recall him asking to go to
another city, such as Dallas or Sherman. 
  

            Hutchings
also testified she slept very soundly due to medications she took.[2]  “[P]eople 
- - they don’t wake me up in the middle of the night once I go to sleep.”  

            When
Hutchings woke about 6:30 or 7:00 the morning of August 13, York had not
returned with her SUV.  She immediately
called York; after several calls, he finally answered, and told Hutchings he
was “ten minutes away.”  Over the next twenty-four
hours, Hutchings placed scores of calls to York.  In fact, State’s Exhibit 1, York’s cell phone
records, document sixty-three calls from Hutchings to York, some of which he
answered, some he did not.  Hutchings
said that, throughout August 13 and into the morning of August 14, York kept
telling her he was within ten minutes of returning her SUV.  Finally, the morning of August 14, Hutchings
called Bonham police and reported the vehicle as stolen.  Around this time, York told Hutchings, over
the telephone, he was returning to Bonham from Sherman.  Waiting on the main highway connecting the
two cities, Bonham police stopped the SUV, driven by York with two passengers,
and arrested York for unauthorized use of a vehicle.  

            The
State offered further testimony that York had exceeded the scope of Hutchings’ consent
to drive her vehicle.  When stopped by
police late the morning of August 14, York told Sergeant Josh Walker that York
had permission to drive the vehicle; he admitted he was supposed to have
returned the vehicle about 2:00 a.m., August 14.  

            Devada
Flowers had known York previously, and met with York about midnight or 1:00
a.m. August 14 in Dallas.  The two “h[u]ng
out” together throughout the early morning hours; York followed Flowers, who
dropped off the vehicle she had been driving. 
Flowers then rode with York to Sherman. 
Flowers said she did not know to whom the vehicle belonged, but York
received several telephone calls where the caller was asking the location of
the caller’s vehicle, to which York answered, “Debra, I’m on my way back.”  Closer to noon on August 14, Bonham police
stopped the vehicle as it entered Bonham.  York was arrested, and Flowers and a male
passenger were released.

            York’s
defense rested primarily on the possibility that, because of Hutchings’ medications,
Hutchings may have given York permission to drive the vehicle longer than just
to the store to buy cigarettes in the early morning of August 13.  When York’s counsel cross-examined Hutchings,
counsel suggested it was possible that she had given York permission to drive
her SUV to Dallas, or that he had called her and said he was too tired to drive
back.  Hutchings, while acknowledging
this was possible, was also quite clear in saying she did not think it likely
she would permit York to take the SUV to Dallas.   Hutchings also said that, if York had asked
her permission to take the vehicle to Dallas, she would not have consented and
that she did not give York permission to go to Dallas, but only to the
store.  Hutchings testified she thought
such permission was “highly doubtful.”  
She parried such questions from York’s counsel:

I told you that if he come back [sic] and asked
me later, if I had a conversation with him, I don’t recall it.  It could have happened, but I don’t -- I don’t
recall it.  I mean, if I remember waking
up for him to go to the store, I believe I would wake up if he asked me if he
could drive my car to Dallas. 

 

As will be discussed infra, the jury was
free to weigh Hutchings’ credibility and consider York’s proposed scenario and
decide between the two views.

            In
his case-in-chief, York presented testimony from Trina Gee, York’s ex-wife and
a friend of Hutchings, and from Victoria York, daughter of Gee and York.  Gee said that, the morning of August 13,
Hutchings called Gee and told her York had taken the vehicle to Dallas, with
Hutchings’ permission, but Hutchings did not go because she did not feel like
it.   Hutchings flatly denied this.[3]  Gee also said that she spoke with Hutchings
throughout the day on August 13 and that Hutchings was never upset or angry
about the situation until York’s cell phone was answered by a female.  At that point, according to Gee, Hutchings
became “furious.”  Only then, according
to Gee, did Hutchings begin to demand the immediate return of the vehicle.  Hutchings, for her part, said that a woman
did answer York’s phone one time; the testimony was not clear, but it appears
that this call occurred August 14, the second day York had the SUV.  Hutchings said the woman who answered York’s
phone would not tell Hutchings where she, York, or the vehicle were at that
time, and she hung up on Hutchings.  It
was around this time that Hutchings called the police.  Although she did not explicitly deny that it
was because a woman had answered the phone, Hutchings did say she had been
conflicted over the absence of the vehicle for more than a day because, every
time she spoke with York, he assured Hutchings he was about to return the
vehicle, and was no more than ten minutes from doing so.  After more than twenty-four hours of these
conversations, Hutchings decided York was not going to return her vehicle.  That was when she decided to alert the
police.

            York’s
evidence presented the jury with the theory that Hutchings reported her vehicle
as stolen only due to anger or jealousy. 
That evidence consisted of testimony from Gee and York’s daughter
Victoria that Hutchings became angry only when another woman answered York’s
phone, and Victoria’s testimony that Hutchings admitted having a “romantic
interest” in York.  As said earlier,
though, Hutchings denied any such romantic involvement or interest in
York.  

            York
also introduced into evidence Hutchings’ affidavit of nonprosecution, executed
November 17, 2009.  In that document,
Hutchings said that she wanted to drop charges, that her vehicle had been
returned, that York’s daughter and ex-wife were “close friends of the family,”
and that Hutchings did not want to press charges.  Hutchings testified she executed this
affidavit at the request of York’s daughter Victoria, but Victoria denied
this.   

            Viewed
in the light most favorable to the verdict, a rational fact-finder could have
found that York intentionally or knowingly operated a motor-propelled vehicle, Hutchings’
SUV.  York offered no testimony to refute
statements by Flowers and Bonham police that York was driving the SUV,[4]
and none to refute Hutchings’ descriptions of her phone conversations with York
over the two days in which he promised to return her vehicle soon.  There was substantial evidence that York’s
use of the vehicle was in excess of Hutchings’ effective consent.

            Hutchings
testified she permitted him to take the SUV to the store to buy
cigarettes.  She said she called him
repeatedly over the next day and night demanding the vehicle’s return.  Even when York was arrested, about noon
August 14, he told police he was to have returned the SUV about 2:00 a.m. that
morning.  The evidence was legally
sufficient to support the jury’s verdict.

            Likewise,
viewed in a neutral light, the evidence supports the jury’s verdict.  The verdict is neither so contrary to the
overwhelming weight of the evidence as to be clearly wrong and manifestly
unjust, nor against the great weight and preponderance of the evidence.  York presented theories that Hutchings may
have granted permission to borrow the SUV beyond the scope of her trial
testimony or that she was vexed by another woman answering York’s phone.  Neither of those possibilities was so
powerfully presented as to render the verdict clearly wrong.  The jury was in the best position to evaluate
the witnesses’ credibility and resolve any conflicts in their testimony.  See
Wesbrook v. State, 29 S.W.3d 103, 111
(Tex. Crim. App. 2000); Duren v. State,
87 S.W.3d 719, 724 (Tex. App.—Texarkana 2002, no pet.).  The evidence was factually sufficient.

            We
affirm the trial court’s judgment and sentence.[5]

 

 

 

                                                                        Josh
R. Morriss, III

                                                                        Chief
Justice

 

Date Submitted:          August
9, 2010           

Date Decided:             August
13, 2010

 

Do Not Publish

 

 

 











[1]Tex. Penal Code Ann. § 31.07 (Vernon
2003).





[2]Hutchings
took Seroquel and Klonopin at night; the inference of her testimony was that
these medications made her sleep very soundly. 






[3]The following is an excerpt of the testimony:

Q.             Okay.  So, you don’t remember telling her that.  Do you remember telling her that he has the
car, he’s in Dallas, it’s okay, I didn’t feel like going with him?

 A.           Nope.

 Q.           Okay.

 A.           Sure
did not.

 Q.           You
didn’t tell her that?

 A.           Huh-uh.






[4]Bonham
Patrolman Joe Gentry testified the SUV was, in fact, a motor-propelled
vehicle.  Hutchings did say, “the car was
my father’s,” but also stated she made the payments and paid the insurance;
throughout her testimony, she referred to the vehicle as hers.  Nowhere did York attempt to rebut or disprove
Hutchings’ ownership.





[5]York
asks, in the prayer of his brief, that, should we find the evidence legally and
factually sufficient, we nonetheless reverse his conviction and remand this
case to the trial court for a new punishment hearing.  York offers no argument, authority, or
explanation for this request.  This request
is inadequately briefed.  Tex. R. App. P. 38.1(i).